Albert Forman v. Commissioner.
Forman v. Commissioner
Docket No. 22843.
United States Tax Court
1951 Tax Ct. Memo LEXIS 264; 10 T.C.M. (CCH) 350; T.C.M. (RIA) 51106; April 12, 1951
*264 Held, taxpayer-husband is taxable on all of the 1945 income earned by him from his membership in certain partnerships, notwithstanding an arrangement with his wife by which he channeled such earnings through another entity, therein dividing the earnings with his wife. George W. Mead, Esq., 1107 Public Service Bldg., Portland 4, Ore., for the petitioner. Douglas L. Barnes, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $18,983.55 in the petitioner's income tax liability for the calendar year 1945. Certain concessions were made by the petitioner leaving only the following issue: Whether respondent erred in taxing to petitioner all of the income of the Stephen Operating Company, an alleged joint venture or partnership between petitioner and his wife. Findings of Fact The petitioner therein, Albert Forman, is an individual residing in Portland, Oregon. He was married to Marion Forman on October 1, 1940, and since that date has continually resided with her in the State of Oregon. Petitioner and his wife filed separate income tax returns for 1945 with the collector of internal revenue *265 at Portland, Oregon. Petitioner's brother, William R. Forman, lived in Seattle, Washington, and was the manager of a chain of about 35 theatres in that area. In 1940 William desired to establish his brother in the theatre business, which business was to be in addition to William's activities as the chain manager. The petitioner had no capital and was working as a house manager in one of the theatres of the chain of which William was over-all manager. On April 1, 1940, petitioner and his brother commenced the operation of two theatres in St. Helens, Oregon. William was to finance most of the venture and petitioner was to contribute his services as the manager of the business. One Ralph Coan originally had a 15 per cent interest in this venture but he withdrew in 1941 leaving petitioner and his brother with a one-half interest each. These two theatres were purchased for $37,500-$20,000 cash, and a mortgage and note executed by William for the balance. Except for Coan's small share, all of the original capital was contributed by petitioner's brother, who used, in part, his own funds and other funds borrowed from a relative and a bank. The initial venture was successful but it was *266 desired to expand the operation by acquiring additional theatres. Petitioner's wife, whom he had recently married, had about $14,000, the proceeds of an insurance policy on the life of her former husband. In 1941 petitioner's wife loaned a total of $13,000 of this money to her husband and took his note in that amount bearing interest at 10 per cent per annum. Petitioner's wife wanted some assurance that if the venture failed she would get her money back. Petitioner's brother, therefore, guaranteed the note with the understanding that if the venture failed he would have to make payment out of his other resources. Petitioner used the money thus borrowed from his wife as his own capital contribution to the expanding business venture. With this and other borrowed new money the venture was expanded to take over the operation of additional theatres. William was opposed to any business arrangement that included a woman and particularly one known to him for so short a time as he had known petitioner's wife. This feeling was, in part, influenced by William's remembrance of petitioner's difficulties with a former wife. William and petitioner understood that the business relationship between *267 themselves did not include petitioner's wife but that the latter was lending the money referred to above solely to the petitioner for his use in the business and that petitioner's financial obligation to his wife was to be guaranteed by William. The earliest recordation of the manner in which petitioner and his brother conducted their business was a formal partnership agreement executed on January 14, 1942. Subsequent amendments and additions to this agreement between petitioner and his brother were executed as of December 22, 1942 and August 31, 1943. This partnership is referred to as Forman Bros. There were no formal records kept of the partnership business until 1943 when a formal set of books was completed. These books were kept by an office manager under the supervision of a certified public accountant. The petitioner and his brother made withdrawals from the business on an equal basis. The books maintained by the partnership reflected two separate operations - one under the heading "United Theatres" and the other "Grand, State and Liberty Theatres." The net worth of Forman Bros. and the partnership capital accounts at the end of the years 1943 to 1947, inclusive, were: *268 Each
Grand
Partner's
United
State
Capital
Year ended
Total
Theatres
& Liberty
Account
December 31, 1943
$ 60,721.10
$ 46,175.93
$14,545.17
$30,360.55
December 31, 1944
73,958.04
44,300.13
29,657.91
36,979.02
December 31, 1945
133,327.49
107,048.37
26,279.12
66,663.74
December 31, 1946
165,481.55
133,732.32
31,749.23
82,740.78
December 31, 1947
105,913.79
95,010.31
10,903.48
52,956.89
The one-half share of the earnings of Forman Bros. as shown by the petitioner on his returns for the years 1940 to 1946, inclusive, were as follows: 1940
$ 460.48
1941
4,158.02
1942
13,430.46
1943
34,362.14
1944
35,326.29
1945
47,327.28
1946
51,003.81
In the year 1943 petitioner filed his tax return on a community property basis and divided the gross income of $34,362.13, reported thereon, equally with his wife Marion, under a "community property election" under the provisions of Oregon statutes as amended in 1943. This division of his income was subsequently declared invalid and petitioner paid additional tax based on the inclusion of all the income in his return. In 1944 petitioner's share *269 of the income from Forman Bros. was reported entirely in a return filed by him. On December 30th of that year petitioner, on the advice of his accountant, wrote a check to his wife Marion in the amount of $4,950.50, stated to represent payment of back interest on the promissory note for $13,000. This interest, in the amount of $4,950.50, was taken as a deduction in that year in the petitioner's return, and this interest was reported as the only taxable income of Marion Forman in her return for 1944. Early in 1945, on the advice to petitioner of an attorney and the accountant, an agreement was drawn up between petitioner and his wife which stated that the parties thereto were forming a partnership under the firm name of "Stephen Operating Company." The venture was stated to be for the purpose of "engaging in the business of operating motion picture theatres and kindred activities, directly or indirectly and through subpartnerships, the making of investments and the engaging in various business endeavors." The offices of this business were to be in Portland, Oregon, and the agreement was stated as having been made on the 1st day of March, 1945. The term of the business so organized *270 was also to begin on that date. The agreement further provided that initial capital would be "advanced by the partners" as follows: Albert F. Forman
$24,000
Marion S. Forman
16,000
The agreement further provided that Albert would receive as compensation for his services to the partnership the sum of $200 per month, and that profits in the partnership would be divided three-fifths to Albert and two-fifths to Marion. At some subsequent date, in the year 1945, but as of March 1, 1945, a new partnership agreement in the same name was signed by Marion and Albert Forman which agreement was identical in all respects with the original except that the stated capital contribution was reduced to $33,500 and allocated as follows: Albert F. Forman
$16,000
Marion S. Forman
17,500
At the time the Stephen Operating Company was established in 1945, the petitioner's brother, William, again repeated his earlier remarks to the effect that he, William, did not intend to include petitioner's wife in any partnership in which William was interested, but that he had no objection to any arrangement as between petitioner and his wife. In May, 1945, certain entries *271 were made by the Forman Bros.' bookkeeper in a set of records established for the Stephen Operating Company consisting of several sheets kept in the Forman Bros.' books. The only entries made in the journal of the Stephen Operating Company, prior to December 31, 1945, were as follows: STEPHEN OPERATING COMPANY
RECORD OF JOURNAL ENTRIES MONTH OF MAY, 1945
Day
Charges
Credits
JE-1
Cash
$ 4,500.00
Marion Forman
$ 4,500.00
To record monies paid to A. Forman for addi-
tional capital needed to purchase 2/5 interest in
Stephen Operating Company
JE-2
Forman Bros.
33,492.88
A. Forman
33,492.88
To record investment in Forman Bros.
JE-3
A. Forman
13,000.00
Marion Forman
13,000.00
To charge A. Forman with amount credited on
Marion Forman's note from him in exchange for
interest in Stephen Oper. Co.
J-4
Forman Bros.
53,613.89
A. Forman
27,806.94
M. Forman
25,806.95
To record profit for March 1 to December
31, 1945, allowing $200 per month for services
A. Forman
The opening investment in "Forman Bros." appearing above, in the amount of $33,492.88, was believed by the certified public accountant *272 to represent the computed net worth of the petitioner's interest in all of the Forman Bros.' enterprises as of February 28, 1945. It included, however, not only the petitioner's interest in the partnership of Forman Bros., as such, but also his interest in two other partnerships separately conducted by the brothers. The cash of $4,500 in the first journal entry above was stated by the petitioner to have been derived from the proceeds of petitioner's interest payment of $4,950.50 which was deposited in Marion's bank account on January 12, 1945; $4,600 of the latter amount above had been returned, however, to Albert Forman and deposited in his personal bank account on January 25, 1945, and used thereafter by him in the purchase of a home. Subsequent to that date Marion Forman never thereafter had in excess of $500 in a bank account during 1945. The money used to purchase the home was later returned to the Stephen Operating Company account. At about the time the agreement forming the Stephen Operating Company was signed, the note given Marion, in the amount of $13,000, was destroyed. In reporting the income of petitioner and his wife for 1945, petitioner's distributive share of *273 the income of the several Forman Bros.' ventures for the year was stated to be $60,900.50. * This amount was allocated to the periods before and after March 1, 1945 (the date Stephen Operating Company was formed). Petitioner reported as his income all of his distributive share of Forman Bros. partnership income for the period January 1 to March 1, 1945, plus $2,000 stated to have been paid him by Stephen Operating Company from March 1 to December 31, 1945, for his services to that company in accordance wit the agreement creating it. This amount was, in fact, never paid the petitioner. The balance of petitioner's share of Forman Bros. income, that is for the period March 1 to December 31, 1945, was reported equally by the petitioner and his wife, each in the amount of $25,806.95. The equal distribution of this income after March 1, 1945, is admittedly in error inasmuch as the agreement creating the Stephen Operating Company provided for three-fifths of the "profits" to go to petitioner and two-fifths to Marion. *274 The Stephen Operating Company, as such, never made any investments or engaged in any business activity. There was deposited in a bank account, kept in its name, the various withdrawals made by petitioner from the Forman Bros. partnership. All the checks drawn on the Stephen Operating Company account were signed either by petitioner or his wife. All but a few of the payees of these checks were petitioner or his wife. The other payees indicate that payment was for taxes, household furniture, insurance, jewelry, social and charitable organizations. In the notice of deficiency herein, the respondent taxed to petitioner all of his income from the Forman Bros. enterprises and disregarded the entity of Stephen Operating Company. Opinion VAN FOSSAN, Judge: Stripped of non-essentials, the situation here is that Forman Bros. was a bona fide partnership between petitioner and his brother, William. Petitioner's wife was not, and, by reason of the attitude of William, could never be, a member of that firm. The earnings of Forman Bros. were distributed, or were distributable, to petitioner and William in equal shares. Petitioner's wife had no investment in Forman Bros. Her only financial *275 concern arose from the fact that she had loaned to her husband, the petitioner here, some $13,000 with which he made his original investment in Forman Bros. So far as concerns Forman Bros., this was a personal loan throughout. This was demonstrated when, in 1944, petitioner issued a check for $4,950.50, payable to his wife, on account of accrued interest. In the taxable year, Forman Bros. had earnings in the amount of approximately $100,000, which were distributed, or distributable, equally between Albert and William Forman, i.e., $47,327.28 to each. Petitioner channeled his share through a paper entity known as Stephen Operating Company and, pursuant to an arrangement with his wife, divided the same on the books of Stephen Operating Company substantially equally with his wife. Petitioner and his wife each returned for taxation the amount shown on the Stephen Operating Company books. Respondent added to petitioner's income the amount returned by the wife and determined a resulting deficiency. On the record before us, there is an ample reason why petitioner can not prevail, i.e., the entity known as Stephen Operating Company had no visible business purpose and never rose to the dignity *276 of a real partnership. So far as shown, it filed no partnership returns. We gather from the record that its true and only purpose was to enable petitioner and his wife to divide their income, as they had previously done under an Oregon community property law, later declared by the courts to be invalid. It matters not whether we label the entity a partnership, as petitioner originally did in this case, or as a joint venture, as petitioner does on brief. Whichever it was, if either, it would be taxable as a partnership. Section 3797, I.R.C.
In Commissioner v. Culbertson, 337 U.S. 733, the Supreme Court laid down certain tests that are to be applied in determining whether any given entity is a partnership, among them the following: "* * * [Whether] the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise * * *." On the record, we are unable to find or to hold that the Stephen Operating Company satisfied this basic test. The arrangement was little, if anything, more than a phantom agency for distributing between petitioner and his wife the income accruing to petitioner from Forman *277 Bros. and the other partnerships. It had no "assets" other than petitioner's income which was routed through it. It made no independent investments. None of the checks issued by it were for any such purpose. Most, if not all, of the checks covered intra-family transactions. We accordingly find that the entity known as Stephen Operating Company does not stand as a barrier to respondent's action in taxing to petitioner all of the income earned by him through his membership and participation in Forman Bros. and other partnerships, one-half of which income was returned for taxation by his wife. Decision will be entered under Rule 50. Footnotes
*. The $60,900.50 included income from Forman Bros. of $47,327.29; income from the Green Parrot Theatre of $13,786.02; and a loss from Film Classics of N.W. in the amount of $212.81. Forman Bros. owned a part of the Green Parrot and Film Classics.↩